UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AFSCME Council 25 and its
Affiliated Locals,

                              Case No. 15-cv-13288
          Plaintiffs,     Hon. Judith E. Levy
                              Mag. Judge R. Steven Whalen

v.

Charter County of Wayne and
Warren Evans,

          Defendants.

_____/

**OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION [2] AND GRANTING DEFENDANTS' MOTION TO DISMISS [16]**

Plaintiffs AFSCME Council 25 and their affiliated Locals ("AFSCME"), the collective bargaining representatives for roughly 2,500 employees in Wayne County, are suing the county and its County Executive/Chief Administrative Officer Warren Evans. Defendants have entered into a Consent Agreement with the state of Michigan, under 2012 Mich. Pub. Acts 436 ("Act 436"), that grants Evans a set of powers designed to deal with what the state of Michigan has determined is a financial crisis in Wayne County. Plaintiffs allege that

defendants are without power to take a variety of actions to address the financial crisis that would negatively affect various rights of plaintiffs' member employees.

## I. Background

On June 17, 2015, defendant Warren Evans, Wayne County's Chief Executive Officer, sent a letter to Michigan's state treasurer, Nick Khouri, seeking to invoke the powers of Act 436 to address Wayne County's financial situation. On August 21, 2015, Khouri approved a consent agreement with Wayne County and Evans under Act 436 (the "Consent Agreement"). One of the primary areas in which defendants seek to use powers under Act 436 is to curtail historical and current labor costs.

Evans has been designated a "chief administrative officer" as defined under M.C.L. § 141.1542(b). "[T]he consent agreement may include a grant to the chief administrative officer . . . by the state treasurer of 1 or more of the powers prescribed for emergency managers as otherwise provided in this act for such periods and upon such terms and conditions as the state treasurer considers necessary or convenient, in the state treasurer's discretion to enable the local government to

achieve the goals and objectives of the consent agreement. However, the consent agreement shall not include a grant to the chief administrative officer, the chief financial officer, the governing body, or other officers of the local government of the powers prescribed for emergency managers in section 12(1)(k)." M.C.L. § 141.1548(10).

Section 12(1)(k) permits the emergency manager to "reject, modify, or terminate 1 or more terms and conditions of an existing collective bargaining agreement" if the emergency manager and state treasurer determine that certain qualifications are met. M.C.L. § 141.1552(1)(k).

Under the Consent Agreement, the County's obligation to bargain with its unions is suspended after thirty days – in this case, on September 21, 2015. (Dkt. 16-3 at 3.) The chief administrative officer may, pursuant to § 141.1552(1)(ee), "exercise powers prescribed for emergency managers to impose by order matters relating to wages, hours, and other terms and conditions of employment, whether economic or noneconomic, for County employees previously covered by the expired collective bargaining agreement." (Id.)

3

Wayne County's employees are members of ten unions. At the time the complaint was filed, nine of the ten unions had agreed to vote on tentative agreements offered by defendants on September 21, 2015, regarding wages, hours, and other terms of conditions of employment. Plaintiffs are the lone holdout, and another union, the Police Officers' Association of Michigan ("POAM"), had indicated that it would not seek ratification of its tentative agreement unless plaintiffs agree to do so, as well.

Plaintiffs have challenged defendants' authority to impose conditions of employment on its members in front of the Michigan Employee Relations Commission ("MERC") and in Michigan state court. Under 1969 Mich. Pub. Act 312, M.C.L. § 423.231 *et seq.* ("Act 312"), plaintiffs had the right to seek arbitration through MERC as long as their collective bargaining agreement was in effect. Plaintiffs sought arbitration in September 2014. The final extension agreement of the CBA expired on June 23, 2015. (Dkt. 16 at 16.) Defendants moved to dismiss the arbitration on September 1, 2015, following the invocation of Act 436 powers. On September 16, 2015, MERC voted unanimously to dismiss the Act 312 petition, finding that Act 436 governed.

On September 14, 2015, plaintiffs filed an action requesting a temporary restraining order and bringing a claim for breach of contract in Wayne County Circuit Court. The Circuit Court granted the TRO, but the Michigan Court of Appeals reversed the Circuit Court on September 16, 2015. The breach of contract claim is still pending in Wayne County Circuit Court.

Plaintiffs filed suit in federal court on September 16, 2015, seeking a temporary restraining order and/or preliminary injunction against defendants. (Dkts. 1, 2.) On September 18, 2015, Judge Matthew Leitman (who recused himself on September 21, 2015) denied the TRO and set a briefing schedule on the preliminary injunction motion. (Dkt. 8.) Plaintiffs filed an amended complaint on September 21, 2015. (Dkt. 9.) The motions are now fully briefed.

On October 6, 2015, the Court held a telephonic status conference concerning oral argument on this motion. During that call, the Court indicated that it would not need to hear testimony related to plaintiffs' request for a preliminary injunction because the relevant facts are not in dispute, and plaintiffs waived their request for argument. Pursuant

to E.D. Mich. Local R. 7.1(f)(2), the Court has determined that oral argument is not necessary for these motions, and will determine them on the briefs.

## II. Legal Standard

When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir.2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The Court must balance four factors when considering a motion for a preliminary injunction: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the

public interest would be served by issuance of the injunction." *City of Pontiac Retired Employees Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (further citation omitted). "When a party seeks a preliminary injunction on the basis of a potential constitutional violation, 'the likelihood of success on the merits often will be the determinative factor.'" *Obama for Am. v. Husted,* 697 F.3d 423, 436 (6th Cir.2012) (quoting *Jones v. Caruso,* 569 F.3d 258, 265 (6th Cir.2009)).

### III. Analysis

Because the first prong of the preliminary injunction standard requires the Court to determine plaintiffs' likelihood of success on the merits, the Court will first address defendants' motion to dismiss, as dismissal would conclusively demonstrate that there is no likelihood of success on the merits of a particular claim and render the rest of the preliminary injunction analysis moot.

### A. First Amendment – Right To Peaceably Assemble and Petition the Government for a Redress of Grievances

Plaintiffs have brought a three-count amended complaint against defendants. It is evident from the tone of the complaint, as well as the record in the case thus far, that plaintiffs are deeply troubled by what is

permitted by Act 436, and distrustful that a financial emergency truly exists.

The first claim is titled "Violation of First Amendment Rights to Petition Government and Present Grievances." (Dkt. 9 at 5.) It alleges "[t]he total ejection and elimination of citizen assembly and right to petition the County government under P.A. 436[.]" (Id. at 6.)

The First Amendment states that the government "shall make no law . . . abridging the freedom . . . to petition the Government for a redress of grievances." U.S. Const. Amend. I. An identical argument was made in *Phillips v. Snyder*, Case No. 13-cv-11370, 2014 WL 6474344, at *18 (E.D. Mich. Nov. 19, 2014), which also presented a challenge to Act 436. The court held the following:

> States are free to make decisions regarding the political control of localities as long as the state citizens are free to "urge proposals" to the state. *Holt Civic Club v. City of Tuscaloosa,* 439 U.S. 60, 73-74 (1978). This is because states have final authority over local matters: "Municipal corporations are political subdivisions of the state, created as convenient agencies for exercising such of the governmental powers of the state as may be instructed to them." *Hunter v. City of Pittsburgh,* 207 U.S. 161, 178 (1907). "[U]ltimate control of every state-created entity resides with the State ... [and] political subdivisions exist solely at the whim of their state." *Hess v. Port Authority Trans–Hudson Corp.,* 513 U.S.

8

> 30, 47 (1994) (citations omitted). The limitations on this power exist at the borders of constitutional limits: for example, the state may not intentionally discriminate among localities in a manner that violates the Equal Protection Clause. Additionally, the Petition Clause does not require that the state actually respond to citizen petitions; it only requires that the state allow its citizens to make the government aware of its views. *Confora v. Olds,* 562 F.2d 363, 364 (6th Cir. 1977) ("[N]either in the First Amendment nor elsewhere in the Constitution is there a provision guaranteeing that all petitions for the redress of grievances will meet with success.").
>
> Plaintiffs have not alleged that defendants prevented them from petitioning the state government. Despite their claim that the emergency manager is politically unaccountable, plaintiffs have the power to petition their locally elected officials to remove the emergency manager. Other options are available as well: they can petition the state government to alter state law, can promote and elect state representative candidates who promise to repeal or amend PA 436, and can bring a referendum petition to invalidate PA 436. Plaintiffs have failed to state a valid claim that defendants violated their constitutional right to petition their government.

*Phillips*, 2014 WL 6474344, at *18.

Plaintiffs have not alleged *any* specific manner in which Act 436 impairs their rights to assemble or to petition the government, and have instead argued that the Act renders "County elections . . . nugatory and meaningless." (Dkt. 9 at 6.) Although this case involves a

chief administrative officer with some emergency manager powers rather than an actual emergency manager, the *Phillips* analysis still holds true: plaintiffs have a variety of options available to them at the municipal and state levels to petition the government and attempt to alter or repeal Act 436, and to request that the County government exercise its Act 436 powers in certain ways.

Further, to the extent *Phillips* can be read to deal only with the right to petition the government, plaintiffs have also failed to state a claim under the First Amendment's Assembly Clause protecting "the right of the people to peaceably assemble." U.S. Const. Amend. I. Nothing in plaintiffs' complaint suggests that defendants have violated this right. Plaintiffs mention no attempt to assemble, nor do they allege any act by defendants that could be construed as a violation of the right to assemble.

Accordingly, plaintiffs' claim for violation of the First Amendment right to assemble and petition the government is dismissed.[1]

---

[1] Plaintiffs also assert in the final paragraph of their First Amendment count that the "clone-like reincarnation of 2011 P.A. 4 [in the guise of Act 436] violates Article I, §10 of the U.S. Constitution, by again impairing contracts." (Dkt. 9 at 6.) However, other than this cursory assertion, plaintiffs allege no facts giving rise to a Contracts Clause claim. Further, the paragraph alleges that '[t]he State Legislature," which is not a party to this case, violated the Contracts Clause, rather

## B. Deprivation of a Property Interest without Due Process or Just Compensation

Plaintiffs allege that defendants have violated the Due Process Clause of the Fourteenth Amendment, which states that no state shall "deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. Amend. XIV §1.

"To establish a procedural due process claim pursuant to § 1983, plaintiffs must establish three elements: (1) that they have a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, (2) that they were deprived of this protected interest within the meaning of the Due Process Clause, and (3) that the state did not afford them adequate procedural rights prior to depriving them of their protected interest." *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999).

"Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and

---

than defendants. Accordingly, to the extent this claim has been brought against the County or its chief executive, it is dismissed.

that support claims of entitlement to those benefits." *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577 (1972). "A contract, such as a collective bargaining agreement, may create a property interest." *Leary v. Daeschner*, 228 F.3d 729, 741 (6th Cir. 2000).

Plaintiffs have failed to plead that they had any particular property interest of which defendants deprived them. Instead, they have alleged that they had a contract with defendants that contained unspecified "property rights." (Dkt. 9 at 7.) Plaintiffs further allege that defendants "will deprive Plaintiffs and the memberships [*sic*] of all property rights related to wages, hours, and terms and conditions of employment, without any due process or independent appeal[.]" (Id.)

Plaintiffs' allegations, while compelling as a factual matter, are insufficient to state a claim as a matter of law. As the Sixth Circuit has held, a collective bargaining agreement *may* create a property interest. *Leary*, 228 F.3d at 741. However, those property interests are created by "either explicit or implied contractual terms." *Ramsey v. Board of Educ.*, 844 F.2d 1268, 1271 (6th Cir. 1988). Plaintiffs must set forth the specific property rights they are referencing in this count.

Plaintiffs, in their response to defendant's motion to dismiss, also appear to argue that their right to seek arbitration of labor disputes under Act 312 was a property right that was denied to them when MERC held that the Act 312 arbitration could not proceed following the County's invocation of Act 436 powers. However, the arbitration proceeding is itself the process plaintiffs argue is due, rather than the property interest to be protected by due process. Plaintiffs are alleging that they are being deprived of protected property interests without due process; the process cannot itself *be* the property interest. *Accord Rodgers v. 36th Dist. Court*, 529 Fed. Appx. 642, 648 (6th Cir. 2013) (holding that a "just cause" provision in a collective bargaining agreement created a property right, and the denial of post-termination arbitration proceedings promised under the agreement failed to afford plaintiffs adequate procedural rights).

Plaintiffs have filed a motion seeking leave to amend this count to state the property interests of which they allege defendants have deprived them. Accordingly, this claim is dismissed without prejudice as to this particular allegation: that Act 436's abrogation of Act 312's

13

arbitration requirements constitutes the deprivation of a property interest.

### C. Federal Preemption Under the Bankruptcy Code

Plaintiffs argue that Wayne County is legally insolvent, pursuant to the state of Michigan's June 30, 2015 report deeming the County in a state of financial emergency. This, plaintiffs argue, qualified Wayne County for federal bankruptcy protection under 11 U.S.C. § 109(c)(3). (Dkt. 9 at 8.) Because Wayne County was qualified for federal bankruptcy protection, plaintiff argues, the federal Bankruptcy Code preempts Act 436.

This is a misreading of section 109(c). That section of the Bankruptcy Code sets certain mandatory requirements that must be met by municipalities in order to become debtors under Chapter 9 of the Code. *See* 11 U.S.C. § 109(c)(1)-(5). The municipality *must* meet all five conditions listed under § 109 to be qualified as a debtor under the Bankruptcy Code.

Contrary to plaintiff's argument, fulfilling the insolvency requirement of § 109(c)(3) is *necessary* for a municipality to be declared a debtor, but is not *sufficient*. Plaintiff argues that the Consent

14

Agreement's bar on a municipality declaring bankruptcy is a violation of the Bankruptcy Code in that it bars a debtor from seeking the bankruptcy protections to which it is entitled. However, section 109(c)(2) requires a municipality to be "specifically authorized, in its capacity as a municipality or by name, to be a debtor under such chapter by State law, or by a governmental officer or organization empowered by State law to authorize such entity to be a debtor under such chapter[.]" Accordingly, the state of Michigan is permitted to bar a municipality from declaring bankruptcy, because such a grant or denial of permission is expressly contemplated in the portion of the Bankruptcy Code governing municipal bankruptcies.

Plaintiffs' preemption claim is dismissed.

### D. Preliminary Injunction

Because plaintiff's complaint fails to state a claim as a matter of law, the Court cannot grant a motion for a preliminary injunction as to any of those claims.

Plaintiffs' motion for a preliminary injunction is denied.

## IV. Conclusion

For the reasons set forth above, it is hereby ordered that:

Defendant's motion to dismiss (Dkt. 16) is GRANTED;

Plaintiffs' First Amendment (Count I) and Bankruptcy Code preemption (Count III) claims are DISMISSED WITH PREJUDICE and plaintiffs' Due Process claim (Count II) is DISMISSED WITH PREJUDICE inasmuch as it claims that an arbitration process guaranteed under Michigan law is a property right that plaintiffs have been denied without due process; and

Plaintiffs' motion for a preliminary injunction (Dkt. 2) is DENIED.

IT IS SO ORDERED.

Dated: October 16, 2015　　　　　s/Judith E. Levy
Ann Arbor, Michigan　　　　　　　JUDITH E. LEVY
　　　　　　　　　　　　　　　　United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 16, 2015.

　　　　　　　　　　　　　　　　s/Felicia M. Moses
　　　　　　　　　　　　　　　　FELICIA M. MOSES
　　　　　　　　　　　　　　　　Case Manager