# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

AFSCME Council 25, and Its
Affiliated Locals,

                Plaintiffs,

v.

Charter County of Wayne and
Warren Evans,

                Defendants.

_____/

Case No. 15-cv-13288

Judith E. Levy
United States District Judge

Mag. Judge R. Steven Whalen

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [44], DENYING PLAINTIFFS' MOTION TO STAY PROCEEDINGS [57], AND DENYING PLAINTIFFS' MOTION TO AMEND [59]

Currently pending is defendants Charter County of Wayne ("Wayne County") and Warren Evans' motion to dismiss plaintiffs' second amended complaint, filed January 22, 2016. (Dkt. 44.) The motion having been fully briefed since April 22, 2016 (Dkt. 54) following two extensions of briefing deadlines by the parties (Dkts. 46, 47), oral argument was to be held on July 21, 2016. (June 1, 2016 Dkt. Entry.) On July 7, 2016, plaintiffs filed a motion to stay this case pending the

outcome of *Phillips v. Snyder*, a case currently pending in the United States Court of Appeals for the Sixth Circuit. (Dkt. 57.) On July 18, 2016, three days before hearing was set on defendants' motion to dismiss, plaintiffs filed a motion to file a third amended complaint. (Dkt. 59.) For the reasons set forth below, a stay is not warranted, defendants' motion to dismiss is granted, plaintiffs' motion for leave to amend their complaint a third time is denied. Oral argument is hereby canceled pursuant to E.D. Mich. Local R. 7.1(f)(2).

## I.    Background

The Court adopts the statement of facts set forth in the opinion and order granting defendants' first motion to dismiss and denying plaintiffs' motion for a preliminary injunction, issued on October 15, 2015. (Dkt. 30 at 2-5.)

The Court initially set the motion hearing for defendants' first motion to dismiss on October 9, 2015. (Dkt. 24.) On October 6, 2015, the Court held a telephonic conference during which it denied a pending motion to disqualify one of defendants' counsel, and following some argument, announced that it would determine defendants' first motion to dismiss and plaintiffs' motion for a preliminary injunction without

2

oral argument.  (Oct. 6, 2015 Dkt. Entry.)  On October 8, 2015, a day before oral argument was originally scheduled, plaintiffs filed a motion to file a second amended complaint.  (Dkt. 27.)

After the first motion to dismiss was granted, plaintiffs filed a motion for clarification and reconsideration of certain aspects of the opinion, including whether the Court's dismissal of the claims in the first amended complaint were with or without prejudice.  (Dkt. 32.)  The Court issued an order denying the motion for reconsideration and reiterating the relevant portions of the opinion by way of clarification. (Dkt. 34.)

On December 4, 2015, the Court granted in part and denied in part the motion to amend the complaint, permitting the plaintiffs to include two counts in their amended complaint: a count that plaintiffs were deprived of certain property rights (namely, pension rights, vested retirement rights, and pension board representation) without due process, and a count that plaintiffs were retaliated against in violation of the First Amendment to the United States Constitution.  (Dkt. 35 at 11.)

3

On December 10, 2015, plaintiffs filed a two-count complaint, significantly altered from the proposed version submitted with their motion to amend, alleging that: 1) they were deprived of certain property rights without due process – the three property rights outlined in the Court's order, and a right to grievance arbitration; and 2) they were retaliated against in violation of the First Amendment for filing this lawsuit. (Dkt. 36.) Plaintiffs also filed a second motion for a temporary restraining order. (Dkt. 37.) On December 14, 2015, the Court denied the motion for a temporary restraining order. (Dec. 14, 2015 Dkt. Entry.)

On January 22, 2016, defendants filed a motion to dismiss the second amended complaint. (Dkt. 44.) Following two stipulations extending plaintiffs' time to respond to March 25, 2016 and then March 28, 2016 (Dkts. 46, 47), plaintiffs then filed a response on March 29, 2016. (Dkt. 49.) The Court struck that response because it did not conform to the Local Rules (Dkt. 51), and plaintiffs then filed their response on April 1, 2016. (Dkt. 52.)

On June 1, 2016, the Court set defendants' motion for a hearing to be held on July 21, 2016. (June 1, 2016 Dkt. Entry.) On July 7, 2016,

plaintiffs filed a motion to stay this case pending the outcome of *Phillips v. Snyder*, currently on appeal at the Sixth Circuit. (Dkt. 57.) Plaintiffs also stated that they were "in the process of filing an Amended Complaint based upon the holding in *Lincoln Park Retirees Association [v.] Coulter et al*, case number 15-cv-12810, wherein the Honorable Gershwin Drain, recently made a ruling that the actions of the Emergency Manager appointed under Act 436 PA 2012, constituted acts of the state government and were not actions of a local official." (*Id.* at 3-4.) On July 17, 2016, plaintiffs filed a motion for leave to file a third amended complaint. (Dkt. 59.)

## II.   Legal Standard

When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir.2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and

conclusions" or "a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## III.   Analysis

### A. Motion to Stay Proceedings

Plaintiffs ask that the Court stay this proceeding until the Sixth Circuit has issued an opinion in *Phillips v. Snyder*.  "The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones,* 520 U.S. 681, 706-07 (1997).

Plaintiffs' motion argues that *Phillips* concerns "several of the parallel issues, now before the Court."  (Dkt. 57 at 4.)  Plaintiffs attach the Appellants' Brief in *Phillips*, presumably to show the range of issues on appeal.  (Dkt. 57-1.)  That brief concerns a variety of constitutional challenges to Michigan's Public Act 436, none of which mirror the due process and retaliation claims currently at issue in this case, which does not challenge the constitutionality of Act 436.  Resolution of *Phillips* will not aid resolution of this case, because the legal and factual issues are almost entirely distinct.

The Court declines to stay this case, and will decide the pending motion to dismiss and motion to amend.

6

### B. Motion to Dismiss

Plaintiffs allege that defendants have violated the Due Process Clause of the Fourteenth Amendment, which states that no state shall "deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. Amend. XIV §1.

"To establish a procedural due process claim pursuant to § 1983, plaintiffs must establish three elements: (1) that they have a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, (2) that they were deprived of this protected interest within the meaning of the Due Process Clause, and (3) that the state did not afford them adequate procedural rights prior to depriving them of their protected interest." *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999).

"Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577 (1972). "A contract, such as

7

a collective bargaining agreement, may create a property interest." *Leary v. Daeschner*, 228 F.3d 729, 741 (6th Cir. 2000).

First, plaintiffs allege that employees who have thirty years of credited service have a vested property right to a disability pension of seventy-five percent of their average final compensation, and that defendants have reduced this to sixty percent. (Dkt. 36 at 8; Dkt. 36-7 at 7-8, 10.)   However, in their response to the motion to dismiss, plaintiffs argue that "there is no vesting requirements [*sic*] for a duty disability pension" but that "any employee who has ten years of credited service is automatically vested with the seventy five percent pension benefit upon obtaining eight to ten years of credit service in the pension plan." (Dkt. 52 at 23.)

Plaintiffs' complaint asserts a right to a disability pension that vests at the time an employee has thirty years of credited service.   Then they argue that there are no such vesting requirements, and finally that there *are* vesting requirements of eight to ten years.   A review of the collective bargaining agreement ("CBA") attached to the second amended complaint reveals that there are two forms of duty disability benefits: one is under Defined Contribution Plan No. 4 for retired

8

employees with certain minimum levels of service (Dkt. 36-7 at 7-8) and one is under Hybrid Retirement Plan No. 5, and has no age or service requirements.  (Id. at 9-10.)

On the face of plaintiffs' complaint, they do not appear to be referencing either of these plans, and do not appear to be referring to any plan actually set forth in the CBA.  Even if the Court read the complaint to be referring to Hybrid Retirement Plan No. 5, the complaint fails to allege that the change in benefits applies retroactively, and plaintiffs fail to argue in their response to the motion to dismiss that the benefit level is actually a property right within the meaning of the Due Process Clause.  Without this, the due process claim cannot survive, and is dismissed with regard to the disability pension plan.

Plaintiffs next allege that the CBA "provided that the Union did not have to bargain pension benefits until the year 2020," and because of that provision, "[a]ll members of the bargaining unit were guaranteed pension credit vesting until 2020 or an additional 5 years of pension credits."  (Dkt. 36 at 8.)  They further allege that defendants unilaterally took away those vested benefits on September 21, 2015.

9

The contract provision in question is § 38.01(L) of the original CBA, which stated:

> Upon the termination of this Collective Bargaining Agreement on September 30, 2011, the parties may agree to bargain over retirement related issues during the next round of contract negotiations. However, all issues concerning retirement, including but not limited to, any and all provisions outlined in Article 38 of this agreement, covering the period of October 1, 2008 through September 30, 2011, shall not be subject to Act 312 arbitration until October 1, 2020.

(Dkt. 36-6 at 6 (the CBA was later extended until September 30, 2014).)

Defendants argue that this provision does not establish a contractual right to unchanged retirement benefits through 2020, but instead a contractual right for plaintiffs not to be required to negotiate those benefits or subject such disputes to Act 312 arbitration. (Dkt. 44 at 23-24.) In defendants' view, none of these clauses provide an exception to the powers afforded them under Act 436 to impose changes after the thirty-day bargaining period ended.[1]

Plaintiffs appear to argue that because the union had no affirmative obligation to bargain over changes, defendants could not

---

[1] As set forth in the first motion to dismiss order, "the County's obligation to bargain with its unions is suspended after thirty days – in this case, on September 21, 2015." (Dkt. 30 at 3 (citing Dkt. 16-3 at 3).).)

impose changes once *their* statutory duty to bargain a new CBA ended. Plaintiffs also reference a variety of exhibits unattached to their complaint that cannot be considered at this juncture.

Plaintiffs provide no reason why a provision that permits them to refrain from submitting disputes to Act 312 arbitration would prevent the imposition of new terms under Act 436 once the duty to bargain had expired. The provision contains no such bar, and does not affirmatively state that the retirement provisions will remain in effect until 2020 – it states only that plaintiffs have no obligation to bargain over the provisions (which they did not) and will not submit any retirement disputes to Act 312 arbitration (which they also did not). Accordingly, this claim must also be dismissed.

Plaintiffs next allege that they were denied arbitration of grievances filed prior to the invocation of Act 436. Those grievances were filed in April and June of 2015. (Dkt. 36 at 9.) As the Court previously stated in its order granting the motion to dismiss the first amended complaint, "the arbitration proceeding is itself the process plaintiffs argue is due, rather than the property interest to be protected by due process. Plaintiffs are alleging that they are being deprived of

11

protected property interests without due process; the process cannot itself be the property interest." (Dkt. 30 at 13.)  In its order regarding the amendment of the complaint, the Court denied leave to amend the complaint to contain this claim.  (Dkt. 35 at 8.)

Plaintiffs have again alleged that the denial of process constitutes a deprivation of a property interest without indicating what the property interest in question was.  Further, plaintiffs have provided no reason why the substance of those grievances relates to the subject matter of this case, or why the Court's order denying leave to amend the complaint in this manner is invalid.  This claim is also dismissed.

Plaintiffs next allege that the CBA contained a twenty-year bar to negotiating changes to Wayne County Employees Retirement System ("WCERS"), and that they further had a statutory and common-law right to prevent restructuring of the pension system.  (Dkt. 36 at 9-10.) However, plaintiffs do not indicate where in the CBA this bar exists, and they do not reference such a bar in their response to the motion to dismiss.  They also do not reference where their statutory and common law rights to prevent such a restructuring arise from.

12

Defendants argue that the composition of the Board is a mandatory subject of bargaining. (Dkt. 44 at 31 (citing *Werdlow v. City of Detroit Police & First System Board of Trustees*, 269 Mich. App. 383 (2006).) Because it is a mandatory subject of bargaining, defendants contend both that the composition of the Board cannot be a property right and that the invocation of Act 436 means that the requirement to bargain over mandatory subjects of bargaining is suspended. (Dkt. 44 at 31.)

The Court specifically permitted plaintiffs leave to amend their complaint to allege that "their rights to representation on the governing public employee pension board" were property rights of which they had been deprived without due process. (Dkt. 35 at 8.) The claim plaintiffs now assert is not about their specific right to representation on the Board, but instead a global right to prevent all changes to the board. Plaintiffs were not granted leave to assert this claim, and to the extent they have, they have not plausibly asserted a property right that exists by virtue of contract or law.

It appears that plaintiffs are alleging that they have a specific property right to the overall composition of WCERS, despite the fact

13

that the board is chosen by different groups of people, including groups of which plaintiffs cannot be a part, including non-union employees and retirees.  As previously mentioned, property rights are created by state law and contracts.  If Act 436 removes the obligation of defendants to bargain over mandatory subjects of bargaining, and plaintiffs cannot plead the existence of the actual contract provision or law at issue, then plaintiffs can neither establish a property right or that property right's deprivation as a matter of law.  This claim is, accordingly, dismissed.

Plaintiffs next allege that they were singled out by defendants because they filed their lawsuit on September 17, 2015, and defendants imposed certain non-economic proposals on them on September 21, 2015.  The imposition of those terms, plaintiffs argue, was in direct retaliation for filing the lawsuit.

Establishing a *prima facie* case of retaliation under the First Amendment requires a plaintiff to establish that (1) it engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against it that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action

14

was motivated at least in part by its protected conduct. *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 399 (6th Cir. 2010) (further citations omitted).

Assuming at this stage that this lawsuit is constitutionally protected speech or conduct, and that the new terms imposed on September 21, 2015 were materially adverse, the Court must determine whether plaintiffs have sufficiently pled that there is a causal connection between the lawsuit and the imposition of these terms. Plaintiffs must make more than a "bare allegation of malice . . . to establish a constitutional claim." *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998). Plaintiffs must show that "the speech at issue represented a substantial or motivating factor in the adverse . . . action." *Rodgers v. Banks*, 344 F.3d 587, 602 (6th Cir. 2003) (internal quote marks and citations omitted). "Motivating factor" is "essentially but-for cause— 'without which the action being challenged simply would not have been taken.'" *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007) (quoting *Greene v. Barber*, 310 F.3d 889, 897 (6th Cir. 2002). The Court should not draw an inference of causation from temporal proximity

15

alone, but very close proximity may create a strong inference of retaliation. *Vereecke*, 609 F.3d at 400 (collecting cases).

Here, the Consent Agreement permitted defendants to impose the terms at issue on September 20, 2015. They did so on September 21, 2015. In fact, plaintiffs admit that defendants announced their intention to do this on September 17, 2015, during a call with Judge Matthew Leitman. (Dkt. 52 at 33.) In support of their argument, plaintiffs offer an unverified e-mail purportedly sent on November 30, 2015, by Diane L. Webb, a Wayne County Commissioner. (Dkt. 36 at 12; Dkt. 36-12.)

This e-mail claims to relay statements made by Evans to Webb, in which Evans states that he would not give plaintiffs the same deal another union got because "[plaintiffs'] lawyer MF'd me up one side and down the other and they want the same as POAM that was willing to work with us?" (*Id.*) Webb claims that she asked if Evans was "going to punish all those working guys that had nothing to do with what that lawyer had to say, because he cussed you out?" (*Id.*) Evans' alleged response was "that's right, I am not going to reward those that fight us, it wouldn't be those [*sic*] to those that don't." (*Id.*)

16

Even if the Court were to accept this unverified e-mail, which relays two layers of hearsay, as admissible evidence, it does not show that defendants imposed new terms because plaintiffs filed suit. Instead, it shows that defendants imposed new terms because of a perceived lack of respect on the part of plaintiffs' counsel. The e-mail does not show that the lawsuit was the but-for cause of the imposition of worse terms.

Further, the unfavorable terms were, by all accounts, on the table and a known risk of plaintiffs' decision not to come to an agreement before September 20, 2015 before the lawsuit was filed, and were in fact a motivation for filing the original suit. (*See* Dkt. 1 at 2 ("On September 20, 2015, protected and accrued benefits will be dramatically slashed or terminated, contrary to the U.S. Constitution.").)

Plaintiffs filed suit on September 16, 2015, to stop the imposition of unfavorable terms on September 20, 2015. (Dkt. 1.) The unfavorable terms were then imposed on September 21, 2015. A First Amendment retaliation claim requires that an adverse action be taken because the plaintiff engaged in protected conduct. When the plaintiff takes the protected conduct to *prevent* the already-known adverse action from

17

taking place, a complaint without pleading something more than what is set forth in this case, cannot properly allege that the occurrence of the known adverse action is the basis for a retaliation claim.[2]  In short, a retaliation claim will generally not stand where an adverse action is threatened by a date certain, a plaintiff responds to the threat by engaging in protected conduct to prevent the adverse action, and a defendant then carries through with the adverse action in the manner previously threatened.

This claim is therefore dismissed.

## IV.   Motion to Amend

For the second time in this case, plaintiffs have sought leave to amend their complaint days before a scheduled hearing on a motion to dismiss.  (*See* Dkts. 27, 59.)  Under Fed. R. Civ. P. 15(a)(2), "[t]he court should freely give leave [to amend a complaint] when justice so requires."   "A motion to amend a complaint should be denied if the amendment is brought in bad faith, for dilatory purposes, results in

---

[2] For instance, had defendants accelerated the imposition of unfavorable terms, or imposed terms outside of the scope previously known to plaintiffs, a retaliation claim might be plausible.

18

undue delay or prejudice to the opposing party, or would be futile." *Crawford v. Roane,* 53 F.3d 750, 753 (6th Cir. 1995).

Plaintiffs seek to add Michigan's Treasurer as a defendant and add a third count claiming that defendants (including the Treasurer) committed a taking of property without due process under the Fifth Amendment of the United States Constitution.  (Dkt. 59-4 at 15-17.)[3] They base this claim on Judge Drain's opinion in *Lincoln Park Police and Fire Retirees Association, Inc. v. Coulter*, Case No. 15-cv-12810, issued on May 5, 2016.  In that opinion, Judge Drain held that certain claims similar to those pleaded here could proceed against the Treasurer, who was named as a defendant in that case – namely, Contracts Clause, due process, and takings claims.  *See generally Lincoln Park*, Dkt. 79.

Plaintiffs claim that the Court, in its order clarifying its opinion on the first motion to dismiss (Dkt. 34) and in its order granting in part and denying in part the first motion for leave to amend the complaint (Dkt. 35), "held that some of the plaintiffs' Constitutional challenges

---

[3] In their motion to amend the complaint, plaintiffs also state that this claim is supposed to include a takings claim under Art. 10, § 2 of the Michigan Constitution. (Dkt. 59 at 4.)   The claim in the complaint does not include a Michigan constitutional claim.

19

had to be dismissed, as plaintiffs did not show that the acts of Evans were acts empowered by the State Legislature and therefore, the challenge as to Impairment of Contracts and the plaintiffs [*sic*] right to petition the government were not properly before the Court."  (Dkt. 59 at 2-3.)  None of this is correct.

As previously set forth, plaintiffs' unenumerated Contracts Clause claim was dismissed because it alleged only that the Michigan State Legislature violated the Contracts Clause of the Constitution, but did not name the Legislature.  (Dkt. 34 at 4-5; Dkt. 30 at 10 n.1.)  The dismissal of the claim had nothing to do with the issue of whether Evans, as chief administrative officer, was "empowered" by the Legislature.  Instead, it was based on the fact that plaintiffs did not allege that Evans or Wayne County *actually did anything to violate the Contracts Clause*.

The Court's dismissal of the plaintiffs' First Amendment right to petition claim similarly had nothing to do with Evans' empowerment by the Legislature.  Instead, the claim was dismissed because plaintiffs failed to plead that their right to petition the government was actually impaired.  (Dkt. 30 at 9-10.)

20

Plaintiffs now seek to add the Treasurer to assert a wholly different claim than the two described above: a takings claim. Plaintiffs also seek, for a second time, to amend their complaint days before a hearing on a motion to dismiss their current claim. (*See also* Dkt. 27 (motion to amend filed one day before the originally scheduled oral argument on defendant's first motion to dismiss).)

Plaintiffs' counsel is also counsel in *Lincoln Park*, which was filed on August 10, 2015, named the Treasurer as a defendant, and contained many of the same claims asserted here. *Id.*, Dkt. 1. Since that case was filed, plaintiffs have filed three complaints in this case, never naming the Treasurer. (Dkts. 1, 9, 36.) Further, defendant's pending motion to dismiss was filed on January 22, 2016. (Dkt. 44.) Briefing was completed on April 22, 2016. (Dkt. 54.) Judge Drain's opinion in *Lincoln Park* was issued on May 5, 2016. *Lincoln Park*, Dkt. 79. Despite having over two months to seek leave to amend the complaint, plaintiffs waited until the eve of hearing to file their motion to amend.

Now, plaintiffs seek to add a defendant their counsel was aware may have needed to be joined for nearly a year, and to assert a claim for the first time despite numerous opportunities to do so. They premise

21

the need for this amendment in large part on purported statements from the Court. They also do this two months after they became (or should have become) aware of the legal authority for doing so.

The Court discerns that the primary purpose of this amended complaint is to further this litigation and to assert a claim that plaintiffs knew should have been added months earlier against a defendant plaintiffs knew should have been included from the outset of this litigation.[4]

Further, plaintiffs' proposed third amended complaint contains at least one significant and undisclosed revision: the Webb e-mail at the heart of the retaliation claim is now gone. (Dkt. 59-4 at 13; *see* Dkt. 36 at 12.) Based on this omission, and plaintiffs' filing of a second amended complaint that failed to conform to the Court's order granting leave to amend, this current motion to amend is not brought in good faith. Instead, it is clear that this amendment is an attempt to prevent dismissal by asserting a new claim, then using the Court's leave to either revise old claims or attempt to relitigate already dismissed ones.

---

[4] At best, what plaintiffs or their counsel have done is waited until Judge Drain issued a ruling in the earlier-filed *Lincoln Park*, then based their amendment on the claims that survived that motion to dismiss.

The motion for leave to amend the complaint is denied.

## V.    Conclusion

For the reasons set forth above, it is hereby ordered that:

Plaintiffs' motion to stay this case (Dkt. 57.) is DENIED;

Defendant's motion to dismiss the second amended complaint (Dkt. 44) is GRANTED;

Plaintiffs' motion for leave to amend the complaint (Dkt. 59) is DENIED; and

This case is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

Dated: July 21, 2016                    s/Judith E. Levy
Ann Arbor, Michigan                   JUDITH E. LEVY
                                       United States District Judge


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 21, 2016.


                                       s/Felicia M. Moses
                                       FELICIA M. MOSES
                                       Case Manager

23

24